IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| WOO SUB YUN, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Civil Action No. 1:20-cv-1062 (RDA/TCB) |
| ) | |
| KIMBERLY ZANOTTI, *et al.*, ) | |
| ) | |
| Respondents. ) | |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on a Rule 56 Motion for Summary Judgment brought by Respondents ("Respondents") in this Immigration and Nationality Act ("INA") case. Dkt. 12. The Court dispenses with oral argument as it would not aid in the decisional process. Fed. R. Civ. P. 78(b); E.D. Va. Loc. Civ. R. 7(J). This matter has been fully briefed and is now ripe for disposition.

Considering Respondents' Motion for Summary Judgment together with Respondents' Memorandum in Support (Dkt. 13), Petitioner Woo Sub Yun's ("Petitioner") Opposition (Dkt. 19), and Respondents' Reply (Dkt. 21), it is hereby ORDERED that Respondents' Motion for Summary Judgment is GRANTED. For the reasons that follow, judgment will be entered against Petitioner.

I. BACKGROUND

Summary judgment may be granted only where there are no genuine disputes of material fact. Fed. R. Civ. P. 56. Accordingly, the Court must first identify the material facts as to which no genuine dispute exists. The following facts are derived from the parties' respective lists of undisputed material facts and are either undisputed or considered in the light most favorable to

Petitioner, the non-moving party. *See Tolan v. Cotton*, 572 U.S. 650, 651 (2014); *see also* Respondents' Statement of Undisputed Material Facts (Dkt. 13 at 6-11); Petitioner's Statement of Undisputed Material Facts (Dkt. 19 at 1-6).

1.      Petitioner first entered the United States on December 10, 2004, on a B-2 visitor visa, with authorization to stay in the country until June 9, 2005. *See* Dkt. 13-1; Dkt. 1-2 at 3; *see also* 8 U.S.C. § 1101(a)(15)(B).

2.      Petitioner's original Form I-94 provided a departure deadline, but Petitioner remained in the United States beyond this date based upon his visitor visa. He has "continuously been physically residing in the United States and never departed from the United States" since his "initial entry on December 10, 2004." Dkt. 1-2 at 3-4. Petitioner disputes that this fact is material, citing the "immediate relative" exemption under Section 245(c)(4) of the INA. Dkt. 19 at 2.

3.      Nearly three years after this expiration date, on April 29, 2008, Petitioner filed a Form I-539 application to extend his B-2 visitor status. Dkt. 13-3. The United States Citizenship and Immigration Services ("USCIS") database indicates that Petitioner's I-539 application stated that his last date of entry to the United States was November 1, 2007, not December 10, 2004. *Id*. Petitioner's Form I-539 application was approved on October 20, 2008. *Id.* ¶ 3. Petitioner disputes that he submitted his I-539 Form on his own and asserts he had no knowledge that this form was filed on his behalf and had been approved.

4.      On May 29, 2008, Petitioner submitted a Form I-485 application for adjustment of status to lawful permanent resident. Ex. C (Form I-485); Dkt. 3-2 at 3-4. That same date, Petitioner's wife, a United States citizen, also filed a Petition for Alien Relative (Form I-130), on Petitioner's behalf. Dkt. 13-4; Dkt. 3-2 at 3-4.

5. Petitioner's completed Form I-485 stated that he last entered the United States on November 1, 2007 as a visitor. Dkt. 13-3 at 1. Attached to that Form I-485 was a copy of a Form I-94 departure record, which showed that he was granted admission to the United States on November 1, 2007, as well as a copy of a stamp on Petitioner's passport supporting that admission. *Id*. at 10. For his part, Petitioner maintains that these documents were submitted on his behalf by his then-immigration counsel, who prepared all of the paperwork submitted for his Form I-485. Dkt. 19 at 4.

6. Petitioner's Form I-485 also represented that he had "not, by fraud or willful misrepresentation of a material fact, sought to procure or procured a visa, other documentation, entry into the United States, or any immigration benefit." *Id*. at 3.

7. Petitioner signed his Form I-485 on May 16, 2008, under penalty of perjury, representing that "this application and the evidence submitted with it is all true and correct." *Id*. at 4. Petitioner maintains that he signed the form without reviewing it in its entirely, trusting that his attorney prepared the form correctly based on true facts and evidence. Dkt. 19 at 4.

8. Petitioner's Form I-485 did not reveal that he had not left the United States since he arrived on December 10, 2004. Dkt. 13 at 8; Dkt. 19 at 4.

9. On October 20, 2008, the Form I-130 and Form I-485 were both approved and Petitioner was granted lawful permanent resident status on a conditional basis. Dkt 3-2 at 4, 13-14.

10. On December 9, 2010, the conditions on Petitioner's lawful permanent resident status were removed. Dkt. 13-5 at 3.

11. On September 24, 2014, United States Customs and Border Protection ("CBP") questioned Petitioner at Dulles International Airport upon his return to the United States after a

visit abroad regarding the I-94 card that Petitioner attached to his Form I-485 application for lawful permanent resident status.  Dkt. 1, ¶ 20.

12. On October 31, 2014, an attorney representing Petitioner submitted a legal memorandum to CBP in response to its inquiry acknowledging that the I-94 card was fraudulent, but representing that Mr. Yun was not aware of the fraudulent I-94 card until CBP brought the card to his attention in 2014.  Dkt. 3-2 at 3-4.  Petitioner also acknowledged that, contrary to the information provided in his Form I-485 application, Petitioner had remained in the United States continuously since December 10, 2004 and had not entered the United States on November 1, 2007.  Dkt. 3-2 at 3-4.

13. On December 4, 2014, CBP admitted Petitioner as a returning lawful permanent resident.  Dkt. 1, ¶ 22; Dkt. 3-3.

14. On June 25, 2015, Petitioner filed a Form N-400 application for naturalization.  Dkt. 13-6; Dkt. 1, ¶ 23.

15. On March 2, 2017, USCIS conducted Petitioner's naturalization application interview.  During the interview, and after being placed under oath, Mr. Yun testified that he had "not given any United States Government officials any information or documentation that was false, fraudulent, or misleading."  Dkt. 13-6 at 17; Dkt. 13-7, ¶¶ 3-4.  Petitioner also testified that he had "not lied to any United States Government official to gain entry or admission into the United States or to gain immigration benefits while in the United States."  *Id.*

16. On March 14, 2017, USCIS denied Mr. Yun's naturalization application on the grounds that he failed to establish that he has been lawfully admitted for permanent residence.  Dkt. 13-3.  USCIS found that at the time of his previous adjustment of status, Petitioner was inadmissible to the United States pursuant to 8 U.S.C. § 1182(a)(6)(C)(i) because he made willful

misrepresentations in his Form I-539 and Form I-485 applications regarding his last date of entry to the United States and he submitted a fraudulent I-94 card with both applications to support those false statements. *Id*. at 3-4. USCIS also found that Petitioner provided false testimony during his naturalization interview with the intent to procure immigration benefits, which rendered Petitioner statutorily without the good moral character required to become a citizen. *Id*.

17. On April 17, 2017, Petitioner noticed an administrative appeal of USCIS's initial denial. Dkt. 13-8. Petitioner also submitted a legal brief arguing that USCIS's denial was erroneous as a matter of law because he had never engaged in fraud or made material willful misrepresentations. Dkt. 13-9.

18. On April 25, 2018, USCIS conducted an interview of Petitioner with respect to his request for a hearing. Dkt. 13-2, ¶ 2.

19. On May 12, 2020, USCIS denied Petitioner's Form N-336 and affirmed its previous denial of his naturalization application. Dkt. 13-10. USCIS affirmed its decision on the basis that Petitioner failed to demonstrate that he had been lawfully admitted for permanent resident status. *Id.* at 2. USCIS found that to avoid discovery he had lied in his I-539 application to extend his B-2 status, Petitioner provided materially false information in his adjustment of status application regarding his last date of entry to the United States. *Id*. at 2-4. USCIS concluded that Petitioner was ineligible for naturalization under 8 U.S.C. § 1182(a)(6)(C)(i) because he sought to procure immigration benefits by willfully misrepresenting material facts; USCIS further found that he had violated 8 C.F.R. § 103.2(a)(2) because his Form I-485 contained material false statements. *Id*. at 5.

20. On September 10, 2020, Petitioner filed this action under 8 U.S.C. § 1421(c), seeking *de novo* review and adjudication of his naturalization application. Dkt. 1.

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). "A material fact is one 'that might affect the outcome of the suit under the governing law.' A disputed fact presents a genuine issue 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" *Id.* at 615-16 (quoting *Spriggs v. Diamond Auto. Glass*, 242 F.3d 179, 183 (4th Cir. 2001)). The moving party bears the "initial burden" of showing that there is no genuine issue of material fact. *Sutherland v. SOS Intern., Ltd.*, 541 F. Supp. 2d 787, 789 (E.D. Va. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). "Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists." *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

On summary judgment, a Court reviews the evidence in the light most favorable to the non-moving party. *McMahan v. Adept Process Servs., Inc.*, 786 F. Supp. 2d 1128, 1134-35 (E.D. Va. 2011) (citing *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003)). Here, Petitioner is the non-moving party and all reasonable inferences are accordingly drawn in his favor. *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 570 (4th Cir. 2015) (quoting *Tolan*, 572 U.S. at 657). This "fundamental principle" guides a court as it determines whether a genuine dispute of material fact within the meaning of Rule 56 exists. *Id.* "[A]t the summary judgment stage[,] the [court's] function is not [it]self to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The INA authorizes judicial review of the denial of a naturalization application by USCIS. 8 U.S.C. § 1421(c). Significantly, the INA provides that "[s]uch review shall be *de novo*,

and the court shall make its own findings of fact and conclusions of law." *Id.* Accordingly, this Court reviews the denial of a naturalization application *de novo*, and its review is not limited to the administrative record. *See, e.g.*, *Hassan v. Johnson*, 93 F. Supp. 3d 457, 461-62 (E.D. Va. 2015) (quoting *Nesari v. Taylor*, 806 F. Supp. 2d 848, 860 (E.D. Va. 2011)); *Kariuki v. Tarango*, 709 F.3d 495, 502 (5th Cir. 2013).

A person applying for naturalization as a United States citizen bears "the burden . . . to show his eligibility for citizenship in every respect." *Berenyi v. Dist. Dir., INS*, 385 U.S. 630, 637 (1967) (describing this rule as "universally accepted"). To that end, "doubts should be resolved in favor of the United States and against the claimant." *Id.* This standard acknowledges that federal courts "have the power to confer citizenship only 'in strict compliance with the terms of an authorizing statute.'" *Cody v. Caterisano*, 631 F.3d 136, 142 (4th Cir. 2011) (quoting *INS v. Pangilinan*, 486 U.S. 875, 884 (1988)).

### III. ANALYSIS

*A. Whether Petitioner was Lawfully Admitted for Permanent Residence Before Applying for Naturalization*

The Court must first determine from this record whether Petitioner was actually admitted as a lawful permanent resident of the United States when he applied for naturalization. Respondents argue that he cannot meet this burden. Dkt. 13 at 12-22. They assert Petitioner was ineligible for permanent residence status because his efforts to obtain immigration benefits by fraud or willfully misrepresenting material facts rendered him inadmissible to the United States under 8 U.S.C. § 1182(a)(6)(C)(i). In addition, Respondents argue that Petitioner's application for lawful permanent resident status contained material false statements in violation of 8 C.F.R. § 103.2(a)(2). Secondly, Respondents argue that *res judicata* does not preclude the Court's

resolution of whether USCIS's decision to deny naturalization to Petitioner was proper.  The Court takes each argument in turn.

*1. Petitioner's Admissibility to the United States Under 8 U.S.C. § 1182(a)(6)(C)(i) and 8 C.F.R. § 103.2(a)(2)*

Only persons who "have been lawfully admitted to the United States for permanent residence" are eligible to become naturalized citizens.  8 U.S.C. § 1429.  The law provides that "[t]he term 'lawfully admitted for permanent residence' means the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws . . .".  8 U.S.C. § 1101(a)(20).  Under 8 U.S.C. § 1182(a)(6)(C)(i), a person cannot be lawfully admitted to the United States if he has ever sought to procure an immigration benefit by "fraud or willfully misrepresenting a material fact." *Id.*

"The ultimate determination as to whether an alien will receive [lawful permanent resident] status is left to the Attorney General 'in his discretion and under such regulations as he may prescribe.'" *Injeti v. U.S. Citizenship & Immigr. Servs.*, 737 F.3d 311, 318 (4th Cir. 2013) (quoting 8 U.S.C. § 1255).  A key implementing regulation requires a lawful permanent resident applicant to certify that his application contains only "true and correct" information.  8 C.F.R. § 103.2(a)(2).  An applicant who reaches the end of a lawful permanent resident application will encounter an oath, which "specifically and absolutely requires that the answers be true and correct." *United States v. Sadig*, 271 F. App'x 290, 295 (4th Cir. 2007).

a. Willfulness

A statutory bar for willful misrepresentation applies when an applicant has "deliberately and voluntarily misrepresented a material fact." *Xing Yang v. Holder*, 770 F.3d 294, 302 n.11 (4th Cir. 2014).

8

Here, Petitioner signed a Form I-485, and he did so under penalty perjury. When he signed the form, he acceded to the following statement:

> I certify, under penalty of perjury under the laws of the United States of America, that this application and the evidence submitted with it is all true and correct.

Dkt. 13-3 at 4. His sworn representation "establishes a strong presumption that he [knew] the contents of the application and has assented to them." *In re Valdez*, 27 I. & N. Dec. 496, 499 (BIA 2018). But Petitioner's signed Form I-485 stated that he had last entered the United States on November 1, 2007. Dkt. 13-3 at 1. In support, Petitioner attached a copy of a Form I-94—a departure record—as well as a copy of a stamp on his passport documenting his purported admission to the United States on November 1, 2007. *Id.* at 10. In his Form I-485 application, Petitioner stated that he had "not, by fraud or willful misrepresentation of a material fact, sought to procure or procured a visa, other documentation, entry into the United States, or any immigration benefit." *Id.* at 3.

None of these representations were true. As Petitioner acknowledges, the Form I-94 was fraudulently issued, and he has "continuously remained" in the United States after entering "in 2004 with a valid B-2 visa." *See* Dkt. 3-3, ¶ 6. According to Petitioner, though, section 1182(a)(6)(C)(i) does not apply to his case because when he signed the Form I-485 containing a false date of entry, he held an "honest belief" that the false entry date was "correct" and "did not have any knowledge that a fraudulent I-94 card had been submitted" with his Form I-485 application. Dkt. 19 at 10-11. Petitioner maintains that at the time he submitted his Form I-485, he was "unaware" of the fraudulent Form I-94. Dkt. 1, ¶ 21. Petitioner argues that the misrepresentation was therefore not material, relying on a partial concurrence and dissent from *In re Tijam*, 22 I. & N. Dec. 408 (BIA 1998). He argues that he did not make false statements willfully and asserts that the Court should not find his misrepresentations were willful because he did not

9

make them with knowledge of its falsity, but rather "accidentally" and "inadvertently." To the extent this concurring opinion drawn from *Tijam* has any persuasive value whatsoever, it appears to have little application to Petitioner's case. He has not demonstrated that any documentary evidence supports a finding that the false information he included in his Form I-485 was, in fact, accurate—instead, Petitioner acknowledges that he last entered the United States three years before the false date of entry listed in his Form I-495. *See* Dkt. 1-2 at 3-4.

Viewing these facts in the light most favorable to Petitioner, the record does not contain evidence sufficient to defeat summary judgment on the issue of his admissibility to the United States under 8 U.S.C. § 1182(a)(6)(C)(i). As this Court has previously found, false statements made to immigration authorities that result from an "honest misunderstanding" do not constitute a genuine issue of fact on summary judgment. *See Asrat v. Barr*, 399 F. Supp. 3d 505, 520 n.11 (E.D. Va. 2019), *aff'd, Asrat v. Taylor*, 386 F. App'x 153 (4th Cir. 2021).

Other courts have reached similar conclusions. *See, e.g.*, *Romero v. Att'y Gen. of the United States*, 390 F. App'x 65 (3d Cir. 2010) (holding that "the element of willfulness is satisfied by a finding that the misrepresentation was deliberate and voluntary" where petitioner did not understand that immigration forms required him to disclose criminal record); *Hanna v. Gonzales*, 128 F. App'x 478, 480 (6th Cir. 2005) (assuming allegations that applicant's friend completed his application were true, "the law still charges [him] with knowledge of the application's contents" where the applicant himself "signed, under oath"); *United States v. Daifullah*, No. 18-CV-163-JM, 2020 WL 553667, at *5 (E.D. Ark. Feb. 3, 2020) (observing that "the law does not allow" defense that applicant "did not understand . . . that by signing his name he was swearing or affirming that all the statements in the application were made by him and were true and complete"), *aff'd,* 11 F.4th 888 (8th Cir. 2021). The Court therefore finds that Petitioner voluntarily and deliberately

made willful misrepresentations in his sworn Form I-485 in violation of 8 U.S.C. § 1182(a)(6)(C)(i).

### b. Materiality

Having found that Petitioner made willful misrepresentations when he submitted his Form I-485, the Court must next determine whether those statements were material. The Fourth Circuit has delineated the materiality standard in the context of lawful permanent resident applications, holding that a material misrepresentation is one that "ha[s] a natural tendency to influence the decision[ ] of [immigration officials]." *Injeti*, 737 F.3d at 316 (adopting misrepresentation standard for a denaturalization proceedings articulated in *Kungys v. United States*, 485 U.S. 759 (1988)). Similarly, the Board of Immigration Appeals considers a misrepresentation material if it "tends to shut off a line of inquiry which is relevant to the alien's eligibility" *Cooper v. Gonzales*, 216 F. App'x 294, 297 (4th Cir. 2007).

Petitioner cannot escape the fact that he signed his Form I-485. As a result, the law "charge[s]" Petitioner "with knowledge of the application's contents," *Hanna*, 128 F. App'x at 480, and he does not explain why the discretionary authority Congress vested in USCIS should have been exercised in his favor when he made misrepresentations that "had a natural tendency to influence the decision" of immigration authorities. *Injeti*, 737 U.S. at 316. Instead, Petitioner advances a number of other arguments.

First, he argues that *Injeti* does not control his case because, unlike the petitioner in *Injeti*, his misrepresentation does not involve a crime of moral turpitude that makes him inadmissible to the United States as a matter of law. Dkt. 19 at 3. However, Petitioner made false statements in his application for lawful permanent residence status, and those false statements impeded a line of inquiry relevant to his eligibility. That is enough to meet the law's materiality standard. Critically,

"finding that a misrepresentation is material does not require concluding that it necessarily would have changed the relevant decision." *Injeti*, 737 at 316 (4th Cir. 2013).  Whether Petitioner would have received the same or a different outcome in his application for adjustment of status, then, simply does not move the needle on materiality.

Petitioner's additional arguments are rooted in the purported lack of evidence to support Respondents' claims regarding his Form I-539 application, which he claims was destroyed in a manner inconsistent with USCIS's regular practices, are also unavailing.  Dkt. 19 at 3-4.  Respondents have moved for summary judgment on the basis of Petitioner's false statements in his Form I-485.  In addition, Petitioner has failed to raise a genuine issue of material fact because he has not sufficiently rebutted Respondents' reliance on testimony that the application was destroyed in keeping with USCIS's regular practices.  *See Pridemore v. USAir, Inc.*, 98 F.3d 1335 (4th Cir. 1996) ("The nonmoving party must rebut affidavits and like factual proof with evidentiary materials as permitted by Fed. R. Civ. P. 56(c).").  In any event, whether a physical record of Petitioner's Form I-539 remains does not affect the Court's inquiry.

The Court also rejects Petitioner's evidentiary arguments regarding the alleged insufficiency of a declaration Respondents submitted with their summary judgment motion.  Although Petitioner argues the declaration is "insufficient as a matter of law for summary judgment," the Court is tasked with reviewing admissible evidence at summary judgment.  Furthermore, Petitioner has not submitted an affidavit or declaration under Federal Rule of Civil Procedure 56(d); this means he has failed to avail himself of a procedural avenue the Rules permit.  That is his choice, but it is not one the Court can allow to defeat summary judgment.  *See Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 246 (4th Cir. 2002) (noting that "our court

expects full compliance with Rule 56([d]) and . . . the failure to file an affidavit under Rule 56([d]) is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate").

Lastly, the Court finds that Petitioner's other arguments with respect to the purported inadequacies of the Krouse declaration must be rejected. First, his objection to the absence of a properly authenticated USCIS database has been rendered moot by Respondents' attachment of that document in their Reply, *see* Dkt. 22-1, which supports Respondents' contention that the last date of entry provided in Petitioner's Form I-539 application was November 1, 2007—the same date he falsely provided in his Form I-485. *See* Dkt. 13-3 at 1. And second, even if Petitioner could demonstrate that USCIS would not have investigated whether he made false statements if he had provided a truthful date of entry in his sworn Form I-485, his misrepresentations would still be material because they "had a natural tendency" to influence immigration officials to approve Petitioner's adjustment of status application. *Injeti*, 737 U.S. at 316. Evidence admissible to resolve that question includes, but is not limited to, testimony from Officer Krouse.

### 2. *Res Judicata*

Contrary to Petitioner's assertions, *res judicata* does not bar this Court from finding that Petitioner was ineligible for adjustment of status and therefore was never "lawfully admitted for permanent residence." Dkt. 19 at 14-15. This is so for at least two reasons. First, there was no final judgment on the merits in a prior lawsuit or adjudicative administrative action. *Jones v. S.E.C.*, 115 F.3d 1173, 1178 (4th Cir. 1997); *see also Mobin v. Taylor*, 598 F. Supp. 2d 777, 784-85 (E.D. Va. 2009). Second, the question the Court answers today—whether Petitioner's adjustment of status to lawful permanent resident was "in substantive compliance with the immigration laws," *Injeti*, 737 F.3d at 315, is not the same issue Customs and Border Protection

13

resolved when it allowed Petitioner to re-enter the United States as a returning lawful permanent resident.

The undisputed evidence on summary judgment establishes that Petitioner lacked lawful permanent resident status. Accordingly, because he has not been "lawfully admitted for permanent residence" in the United States, Petitioner is ineligible for naturalization. *See* 8 U.S.C. § 1427(a).

### B. Good Moral Character

Respondents also argue that should the Court determine Petitioner lacks good moral character, such a finding would independently entitle Respondents to summary judgment. Dkt. 13 at 22-25. But in *Injeti*, the Fourth Circuit vacated the district court's judgment to the extent it decided the issue of the petitioner's good moral character. 737 U.S. at 318. That "conclusion was not essential to the district court's grant of summary judgment" given that "a failure to satisfy any one of the statutory prerequisites renders an applicant ineligible for naturalization." *Id.* (citing *Fedorenko v. United States*, 449 U.S. 490, 506 (1981)). Here, the Court has held that summary judgment must be granted in Respondents' favor because Petitioner had not been lawfully admitted for permanent residence. The Court expressly declines to reach the question of Petitioner's good moral character "in light of the possibility that [he] might, in the future, seek immigration benefits to which [his] character is relevant." *Injeti*, 737 F.3d at 318-19.

IV. CONCLUSION

For the foregoing reasons, the USCIS decision to deny naturalization to Petitioner was proper. Accordingly, it is hereby ORDERED that Respondents' Motion for Summary Judgment (Dkt. 12) is GRANTED.

The Clerk is directed to enter judgment for Respondents pursuant to Federal Rule of Civil Procedure 58 and close this civil action.

It is SO ORDERED.

Alexandria, Virginia
September 30, 2021

/s/
Rossie D. Alston, Jr.
United States District Judge